United States Court of Appeals
Fifth Circuit

**F I L E D**

February 7, 2007

Charles R. Fulbruge III
Clerk

*In The United States Court Of Appeals*
*For The Fifth Circuit*

No. 06-20752
Summary Calendar

RUBY PRESTON,

> Plaintiff — Appellant,

v.

TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,

> Defendant — Appellee.

Appeal from the United States District Court
For the Southern District of Texas
No. 4:05-CV-334

Before SMITH, WIENER, and OWEN, Circuit Judges.

PER CURIAM:[*]

Ruby Preston sued the Texas Department of Family and Protective Services (TDFPS), alleging race discrimination and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII). The district court granted TDFPS's motion for summary judgment on all of Preston's Title VII claims, and Preston appeals. We affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I

Preston, who is African-American, began working for TDFPS in 1990. In late 2001, she was assigned to a position in a unit supervised by Krista Rodriguez, who is white. Preston received positive evaluations from Rodriguez during 2001 and 2002. In October 2002, Preston reported to Rodriguez that other employees were complaining that Dory Allen, a white supervisor under Rodriguez's supervision, was discriminating against them because they were African-American.

Preston contends that Rodriguez began to treat her differently after she reported Allen's discrimination. Preston received her first "unsuccessful" evaluation from Rodriguez for the period from January to July 2003. In January 2004, Preston filed an internal administrative complaint against Rodriguez alleging, *inter alia*, race discrimination. A TDFPS investigation concluded that there was no evidence of discrimination.

On Friday, April 23, 2004, Preston was the "on-call" caseworker for child death cases. At 9:00 p.m., she received a referral for a case involving an infant that had died of massive internal injuries, in which the father was the alleged perpetrator. The infant's mother and a surviving sixteen-month old sibling had taken the infant to the hospital, and the father's whereabouts were unknown. This case was given a Priority I designation, which means that the caseworker must initiate the investigation within 24 hours of receiving the assignment. In cases involving physical or sexual abuse of a child, TDFPS and law enforcement conduct a joint investigation, and the TDFPS caseworker must first contact the Houston Police Department (HPD) dispatcher in order to make contact with the police officers assigned to

2

the case.

After receiving the Priority I call, Preston called the hospital to locate the mother and sibling, but she was told that they had left the hospital with police officers to go to a relative's house. Preston then called HPD and left voice mail messages for the two officers assigned to the case. Preston never called the HPD dispatcher to make contact with the officers. Preston attempted to contact the officers over the weekend, but was told that they were off duty until Monday. Preston also made two visits to the family's home over the weekend, but the home was empty on both occasions. In her deposition, Preston admitted that she did not expect the family to be at the home and that she did not wear professional attire during these visits. Preston finally made contact with one of the officers on Monday afternoon, and he told her where the mother and sibling were staying. On Tuesday, four days after receiving the case, Preston finally made contact with the mother and sibling, and she took the sibling into custody at that time.

Jennifer Williams, the TDFPS risk director, e-mailed Preston on April 26, 2004 to ask about the child death case. Over the course of the next few days, in a series of emails and phone calls, Preston made several disrespectful comments about Williams and Rodriguez and accused them of calling her a liar.

On April 23, 2004, in another TDFPS case, Preston left a message on a client's answering machine, and the client complained to TDFPS that the message was unprofessional and discourteous. Rodriguez and Bella Alex, the TDFPS program administrator, independently listened to the message and determined that it was

3

unprofessional and in violation of department policy, and Preston's involvement with that case was terminated. Preston maintained that the message was appropriate.

On April 29, 2004, Preston was involved in another Priority I case. Preston told Rodriguez that she staffed the case with Dorothy Oakes, another supervisor, but Preston did not include this information in the reports that she submitted on May 27, 2004 and June 1, 2004. On June 2, 2004, Rodriguez contacted Oakes who said that Preston had never placed her on the case.

On May 6, 2004, Rodriguez met with Preston to discuss several violations of department policy, and in late May of 2004 Preston received two sets of Rodriguez's written conference notes from this meeting. In response to this meeting, Preston filed a second administrative complaint against Rodriguez at the end of May 2004, alleging that Rodriguez was retaliating against her for filing the earlier complaint. On June 9, 2004, Rodriguez and Alex recommended that Preston be terminated for violating several department policies. Rodriguez informed Preston of the recommendation on June 21, 2004. Randy Joiner, the TDFPS Regional Director, terminated Preston's employment on June 29, 2004. Preston appealed her dismissal internally, and an administrative law judge upheld the termination after finding that Preston had violated department policy. Next, Preston filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) and received a right-to-sue letter. Preston then filed this suit.

## II

The first issue on appeal, subject to *de novo* review, is whether Preston exhausted her

4

administrative remedies before filing suit.[1]  A plaintiff must file a charge of discrimination with the EEOC before a court may consider her Title VII claims.[2]  We must examine Preston's complaint in light of the charges filed in her administrative complaint to determine whether she satisfied this requirement as to each of her claims.

Two dueling principles govern our determination of whether the Preston exhausted her administrative remedies:  (1) "[c]onsistent with the remedial purposes underlying Title VII, we construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading,"[3] and (2) the charge must contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges and so the EEOC may have an "opportunity to attempt to obtain voluntary compliance."[4]  Based on these principles, a Title VII suit "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."[5]

---

[1]*See Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir.), *cert. denied* 127 S. Ct. 299 (2006).

[2]*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970).

[3]*Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982).

[4]*Sanchez*, 431 F.2d at 467; *Price*, 687 F.2d at 78; *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878-79 (5th Cir. 2003).

[5]*Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983).

Preston alleges that TDFPS discriminated and retaliated against her in numerous ways, including assigning her too much work, assigning her work that was not assigned to white workers, assigning her work that was outside of her job description, and refusing to pay her for overtime. In the charge filed with the EEOC, however, Preston only alleged discrimination and retaliation in connection with two written admonishments, given on May 24, 2004 and the first week of June 2004, and with her termination. The crucial element of a charge of discrimination is the factual statement contained therein.[6] Therefore, Preston satisfied the prerequisite of filing an administrative complaint with the EEOC prior to initiating her Title VII lawsuit only as to the discrimination and retaliation claims involving the two written admonishments and Preston's termination. Preston failed to exhaust her administrative remedies as to her other allegations.

### III

Having determined which issues were properly included in Preston's complaint, we must next determine whether the district court's grant of summary judgment to TDFPS on these issues was proper. We review a district court's grant of summary judgment *de novo*.[7] Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[6]*Sanchez*, 431 F.2d at 462.

[7]*Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004).

of law."[8]  An issue as to a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party.[9]  We construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor.[10]  "We may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision."[11]

## A

A plaintiff may prove a Title VII discrimination claim through direct or circumstantial evidence.[12]  Absent direct evidence of discrimination, *McDonnell Douglas Corp. v. Green*[13] and its progeny establish the burden-shifting analysis to be applied.  In order to overcome a motion for summary judgment on her discrimination claim, the plaintiff must first establish a *prima facie* case of discrimination, which entitles her to a presumption of discrimination.[14] The defendant may rebut this presumption by presenting a legitimate, nondiscriminatory

---

[8]FED. R. CIV. P. 56(c).

[9]*Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[10]*Id.*

[11]*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003).

[12]*Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[13]411 U.S. 792 (1973).

[14]*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

7

reason for its actions.[15] Under the traditional *McDonnell Douglas* analysis, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that the defendant's proffered reasons for its action are pretextual.[16]

To establish a *prima facie* case of discrimination, a plaintiff must provide evidence that she "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably."[17] There is no dispute as to the first two elements of Preston's *prima facie* case. Preston's claim that TDFPS unlawfully discriminated against her by giving her two written admonishments, however, does not survive the third element. As to discrimination claims, "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions."[18] Written admonishments do not rise to the level of ultimate employment actions.

Preston's claim that TDFPS unlawfully discriminated against her by terminating her fails at the fourth element. Because Preston failed to present any evidence that she was

---

[15]*Id.*

[16]*Id.*

[17]*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

[18]*Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995) (per curiam); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2410-14 (2006) (discussing the differences in the adverse employment actions prohibited by Title VII's substantive and anti-retaliation provisions).

8

replaced, her burden "was to establish that the misconduct for which she was discharged was nearly identical to that engaged in by" an employee of another race whom TDFPS retained.[19] While Preston points to the alleged preferential treatment given to several employees to satisfy this burden, she fails to present any evidence that those employees engaged in "nearly identical" misconduct for which she was terminated. Preston only cited the case of one employee that was arguably similar to her situation. TDFPS claims that one of the reasons that Preston was terminated was for failing to make contact with the mother and surviving sibling in a Priority-I child death case within 24 hours. In her deposition, Preston claimed that Stephanie Hammond, a white employee, was not terminated even though she did not make contact with a family for five days in a child death case with a surviving sibling. But Preston admitted that she "had no idea" about the circumstances of that case but had "heard" that the family "left for Mexico" so Stephanie Hammond "couldn't have possibly made contact within five days." Preston presented no other evidence about that case. Preston's unsubstantiated assertion is insufficient to raise a fact issue that a similarly situated employee was treated more favorably.[20] Accordingly, Preston has failed to establish a *prima facie* case on her discrimination claims.

**B**

---

[19]*Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982).

[20]*See Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) ("[T]he nonmovant cannot satisfy [her] burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").

The same burden-shifting analysis applicable to Preston's Title VII discrimination claims also applies to Preston's Title VII retaliation claims.[21] To establish a *prima facie* case of unlawful retaliation, the plaintiff must provide evidence that (1) she engaged in activity protected by Title VII, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action.[22] If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the action.[23] If the defendant articulates a legitimate reason, the burden then shifts back to the plaintiff to show that the defendant's stated reason is pretextual.[24] Under this final burden, the plaintiff must show that "but-for" the protected activity, the adverse action would not have occurred.[25]

TDFPS contends that Preston failed to establish a *prima facie* case of unlawful retaliation. We need not make that determination in this case, however, because Preston has failed to create a fact issue at the third step of the burden shifting analysis. We therefore assume without deciding that Preston established a *prima facie* case.

Under the second step of the burden-shifting analysis, where there is a close timing between an employee's protected activity and an adverse employment action, the employer

---

[21]*Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).

[22]*Id*.

[23]*Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001).

[24]*Id.*

[25]*Id.*

10

must offer "a legitimate, nondiscriminatory reason that explains both the adverse action and the timing."[26] TDFPS has articulated several legitimate, non-discriminatory reasons for the two written admonishments, Preston's termination, and the timing of those decisions. TDFPS contends that it gave Preston the two admonishments in late May 2004 and terminated her in June 2004 because Preston violated several department policies in April, May, and June 2004. Preston allegedly violated department policies in late April 2004 when she mishandled a child death case by failing to make contact with the family within 24 hours, failing to call the police dispatch, and failing to contact her supervisor or the risk director after she did not make contact with the family within 24 hours. TDFPS also maintains that Preston violated department policies in April, May and June 2004 by wearing inappropriate attire during an investigation; engaging in unprofessional written and verbal communications with her co-workers, supervisors, and clients; and misrepresenting to her supervisor that she had staffed a case with another supervisor.

At the third step of the analysis, the burden shifts to Preston to show that TDFPS's proffered legitimate reasons are pretextual. Preston must rebut *each* legitimate reason articulated by TDFPS.[27] Our inquiry is not whether TDFPS's proffered reasons were incorrect; instead, our concern is whether TDFPS's legitimate reasons, accurate or not, were the real reasons for her written admonishments or termination.[28] Preston did present some

---

[26] *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

[27] *See Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[28] *Id.* at 579.

11

evidence of pretext on two of TDFPS's proffered reasons: (1) Preston's failure to make face-to-face contact with the family within 24 hours and (2) Preston's failure to contact her supervisor or the risk director in a timely manner. However, Preston failed to rebut TDFPS's other articulated reasons. Preston failed to produce any evidence that her (1) failure to call police dispatch in the child death case; (2) inappropriate attire; (3) inappropriate written and verbal communications with her co-workers, supervisors, and clients; or (4) misrepresentation to her supervisor were not TDFPS's real reasons for the admonishments or her termination. Preston failed to create a genuine issue of material fact that TDFPS's proffered reasons were pretextual.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for TDFPS on all of Preston's Title VII claims.