TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00533-CV






County of Travis, by and through Greg Hamilton, in his Official Capacity

as Sheriff of Travis County, Appellant


v.


Peggy Manion, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. D-1-GN-09-003527, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 In this interlocutory appeal, Travis County (the County) complains of the trial court's
denial of its plea to the jurisdiction. (1) Peggy Manion sued the County, her former employer, alleging
that she was discriminated against and subjected to a hostile work environment on the basis of
gender in violation of the Texas Commission on Human Rights Act (TCHRA). See Tex. Lab. Code
Ann. § 21.051 (West 2006). Manion further alleged that she was retaliated against for complaining
of the discriminatory treatment. See id. § 21.055 (West 2006). On appeal, the County contends that
the trial court lacked subject matter jurisdiction and erred in denying its plea to the jurisdiction
because Manion failed to exhaust her administrative remedies as to her discrimination and hostile
work environment claims and failed to state a prima facie case as to any of her claims. Because we
conclude that the trial court lacked subject matter jurisdiction, we reverse the trial court's ruling and
render judgment dismissing Manion's suit for want of jurisdiction.


FACTUAL AND PROCEDURAL BACKGROUND


 Manion was hired as an Office Specialist in the Travis County Correctional Facility
Commissary on May 7, 2007. (2) She was supervised by Collette Girouard and was part of a staff that
was all female with the exception of one male employee who worked with Manion under Girouard
for a brief time. On October 10, 2007, Manion orally reported to Major Darren Long that she and
other staff members had been subjected to abusive and hostile treatment by Girouard. She cited
instances in which Girouard used profanity, yelled at Manion and her co-workers, insulted them, and
humiliated them regarding disciplinary matters in the presence of others. She did not indicate that
she or her co-workers were being singled out for this type of treatment based on race, gender, age
or any other status. That same day, Long initiated an investigation and instructed Girouard's
supervisor, Lieutenant Lloyd Eacret, to interview commissary employees. Although the employees
interviewed generally referred to Girouard as direct, strict, and demanding, Eacret's interviews did
not confirm Manion's allegations that Girouard created an abusive or hostile work environment.

 On October 25, 2007, Girouard notified Eacret that she had held a counseling session
with Manion regarding how to act around inmates. Girouard stated that she had been having some
minor issues with Manion's conduct with inmates and brought in Sergeant Charles Barr, who had
many years of experience, to explain the best ways to supervise them. In response, Eacret directed
Girouard to schedule a meeting with Manion for October 29, 2007.

 At the meeting, attended by Manion, Girouard, Barr, and Long, Manion presented a
written grievance reiterating and expanding on her verbal complaint to Long. Again, Manion made
no allegations that she or her co-workers were being singled out on the basis of race, gender, age,
or any other status. Long forwarded the grievance to the internal affairs division for investigation
and directed that Girouard be temporarily reassigned, pending the investigation. Girouard was
transferred from the commissary that day. The internal affairs investigation, submitted to Long on
January 16, 2008, sustained Manion's allegations that Girouard used profanity, yelled at employees,
and generally employed a management style that created a hostile or stressful work environment. 
Long recommended that Girouard receive a written reprimand, be placed on a developmental action
plan, and be returned to her position as commissary manager and that her progress be monitored,
especially with regard to her working relationships and demeanor with commissary staff. His
recommendation was accepted and implemented and, according to subsequent interviews
with commissary staff, achieved the desired results of improving the work environment and
working relationships.

 During the course of the investigation, on December 2, 2007, commissary staff
member Betty Holter complained to Eacret that Manion was "not carrying her share of the work" and
was talking to the inmates too much. She described one instance in which Manion was surrounded
by inmates and expressed concern for her safety. Eacret interviewed the other commissary
employees, who voiced the same observations and concerns. In light of Manion's previous
counseling regarding inmate fraternization, prior documentation of her poor work performance, her
probationary status as a new employee, and the current concerns expressed by commissary staff,
Eacret recommend to Long that Manion be terminated. Long, however, concluded that concerns
about Manion's placing herself in dangerous situations existed because of the presence of inmates
and instead transferred her to the central warrants division on December 18, 2007.

 While working in the commissary and training in the warrants division, Manion
worked from seven a.m. to three p.m., the "A shift." However, the County required that after she
completed her training in the warrants section, Manion was to change shifts, stating that A-shift
assignments in the warrants division were granted by seniority and there was no opening in the A
shift for Manion. (3) Manion objected to changing from the A shift because of child care concerns and
filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and
the Texas Workforce Commission Civil Right Division (TWC). In identifying the circumstance of
alleged discrimination, Manion checked only the "Retaliation" box. In the discrimination statement
contained in the charge, Manion stated that after she had complained of Girouard's hostile and
abusive activity, she was transferred and subsequently informed that she would have to work "the
midnight shift."

 The parties continued to discuss the shift change and mediated the charge on
April 23, 2008. During the discussions, the County offered to transfer Manion's husband, who also
worked for the County, to the A shift, so that he would be available to address their child
care concerns, but Manion declined to involve her husband and his work schedule. The
County also offered Manion her previous position in the commissary under the supervision of
Girouard, which Manion also declined. The parties were unable to resolve the dispute through
discussion and mediation, and on May 2, 2008, the County assigned Manion to the B shift. (4) On
May 7, 2008, Manion resigned, claiming constructive discharge based on the forced shift change. 
On June 24, 2008, Manion filed an amendment to her charge, adding claims that she was forced to
resign because of a hostile work environment and retaliatory conditions and that she was
discriminated against because she complained of discriminatory and retaliatory behavior.

 In October 2009, Manion filed this suit (5) alleging that she was discriminated against
and subjected to a hostile work environment on the basis of gender, see Tex. Lab. Code Ann.
§ 21.051, and retaliated against for complaining of the discriminatory treatment, see id. § 21.055. (6) 
The County answered and filed a plea to the jurisdiction contending that the trial court lacked subject
matter jurisdiction over Manion's claims because she had failed to perfect her claims of
discrimination and hostile work environment and failed to establish the prima facie elements of any
of her claims. The trial court denied the plea to the jurisdiction. This appeal followed.


DISCUSSION


Standard of Review


 A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of
subject matter jurisdiction. See Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004). Because
subject matter jurisdiction presents a question of law, we review a trial court's ruling on a plea to
the jurisdiction de novo. Westbrook v. Penley, 231 S.W.3d 389, 394 (Tex. 2007). Where, as here,
a plea to the jurisdiction challenges the existence of jurisdictional facts, we may consider relevant
evidence submitted by the parties and must do so when necessary to resolve the jurisdictional issue. 
Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 223, 227 (Tex. 2004); Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554-55 (Tex. 2000); Lopez v. Texas State Univ., ___S.W.3d ___,
No. 03-10-00867-CV, 2012 Tex. App. LEXIS 3199, at *7 (Tex. App.--Austin Apr. 20, 2012, no pet.
h.); Good Shepherd Med. Ctr. v. State, 306 S.W.3d 825, 831 (Tex. App.--Austin 2010, no pet.). (7)

 When the challenge to jurisdictional facts does not implicate the merits of the case,
and the facts are undisputed, the trial court rules on the plea to the jurisdiction as a matter of law, and 
the appellate court reviews the ruling de novo. Miranda, 133 S.W.3d at 226-27; Lopez, 2012 Tex.
App. LEXIS 3199, at *8; University of Tex. v. Poindexter, 306 S.W.3d 798, 806 (Tex. App.--Austin
2009, no pet.). (8) When the plea to the jurisdictional facts implicates the merits of the plaintiff's cause
of action, the party has a burden similar to that in a traditional summary judgment. Miranda,
133 S.W.3d at 227-28; Good Shepherd Med. Ctr., 306 S.W.3d at 831. If the evidence creates a fact
issue as to jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue must
be resolved by the fact finder at trial. Miranda, 133 S.W.3d at 227-28; Poindexter, 306 S.W.3d at
807. On the other hand, if the evidence is undisputed or fails to raise a fact issue, the trial court rules
on the plea to the jurisdiction as a matter of law. Miranda, 133 S.W.3d at 228; Poindexter,
306 S.W.3d at 807.


Governmental Immunity under the TCHRA


 Governmental immunity deprives a trial court of subject matter jurisdiction in suits
against political subdivision of the state, including counties, unless the political subdivision consents
to suit and is therefore properly asserted in a plea to the jurisdiction. Rolling Plains Groundwater
Conservation Dist. v. City of Aspermont, 353 S.W.3d 756, 759 n.4 (Tex. 2011) (per curiam)
(distinguishing between sovereign immunity, which protects the State and its divisions from suit and
liability, and governmental immunity, which affords like protection to political subdivisions,
including counties, cities, and school districts); Miranda, 133 S.W.3d at 224, 225-26. The TCHRA
provides a limited waiver of governmental immunity when a governmental unit has committed
employment discrimination on the basis of race, color, disability, religion, sex, national origin, or
age, see Tex. Lab. Code Ann. §§ 21.002 (West Supp. 2011) (defining "employer" to include a
county, municipality, state agency, or state instrumentality), .051 (outlining circumstances under
which employer commits discrimination), or has retaliated or discriminated against a person who,
under the TCHRA, opposes a discriminatory practice, makes or files a charge, files a complaint, or
testifies, assists, or participates in any manner in an investigation, proceeding, or hearing, see id.
§ 21.055 (outlining circumstances under which employer commits retaliation). "For a suit to proceed
against a governmental unit under a statute [that waives immunity], the court must first look to the
terms of the Act to determine the scope of its waiver and then 'consider the particular facts of the
case . . . to determine whether it comes within that scope.'" Texas Dep't of Criminal Justice
v. Cooke, 149 S.W.3d 700,704 (Tex. App.--Austin 2004, no pet.) (quoting Texas Dep't of Criminal
Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001) (ellipsis in original)).


Scope of Charge


 In its second issue, the County argues that the trial court erred in failing to dismiss
Manion's gender discrimination and hostile work environment claims because she did not timely
assert them at the administrative level. (9) The County contends that Manion's original charge of
discrimination asserted only a retaliation claim and that to the extent Manion alleged claims for
discrimination and hostile environment in the amendment to her charge, those claims were not made
within 180 days of the alleged discriminatory activity as required by section 21.002 and were thus
time-barred. See Tex. Lab. Code Ann. § 21.202 (West 2006). Therefore, the County asserts, the trial
court lacked jurisdiction over Manion's discrimination and hostile environment claims. Because this
issue challenges jurisdictional facts that do not implicate the merits of the case, and the facts are
undisputed, we review the trial court's ruling de novo. Miranda, 133 S.W.3d at 226-27; Poindexter,
306 S.W.3d at 806.

 It is well settled that an action under the TCHRA requires an exhaustion of
administrative remedies, see Hoffmann-La Roche, Inc., v. Zeltwanger, 144 S.W.3d 438, 446 (Tex.
2004) (exhaustion of remedies mandatory prerequisite to filing civil action under the TCHRA), and
that the failure to exhaust the TCHRA's administrative remedies is a jurisdictional defect, see City
of Waco v. Lopez, 259 S.W.3d 147, 149, 154 (Tex. 2008) (noncompliance with TWC procedures
deprives courts of subject matter jurisdiction). Under the TCHRA, the exhaustion of administrative
remedies begins when a party files a charge of discrimination with the TWC. See Tex. Lab. Code
Ann. § 21.201 (West 2006); Waffle House, Inc. v. Williams, 313 S.W.3d 796, 804 (Tex. 2010). A
primary purpose of the charge is to trigger an agency investigation so that voluntary compliance is
achieved through a conciliatory process. Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006). (10) 
"'The crucial element of a charge of discrimination is the factual statement contained' in the
administrative complaint." Bartosh v. Sam Houston State Univ., 259 S.W.3d 317, 321 (Tex.
App.--Texarkana 2008, pet. denied) (quoting Preston v. Texas Dep't of Family & Protective Servs.,
222 Fed. Appx. 353, 356 (5th Cir. 2007) (per curiam)). Because most complaints are made by
persons unfamiliar with the technicalities of formal pleadings, courts construe the complaint liberally
and "look slightly beyond its four corners, to its substance rather than its label." Pacheco, 448 F.3d
at 788-89. Nonetheless, the charge must "contain an adequate factual basis so that it puts the
employer on notice of the existence and nature of the charges." Bartosh, 259 S.W.3d at 321 (citing
Preston, 222 F. App'x at 356). "[W]e will not construe the charge to include facts that were initially
omitted." Harris v. David McDavid Honda, 213 F. App'x 258, 261 (5th Cir. 2006) (per curiam) (not
for publication) (citing Price v. Southwestern Bell Tel. Co., 687 F.2d 74, 78 (5th Cir. 1982)).

 The scope of a suit under the TCHRA is limited to the scope of the investigation that
"can reasonably be expected to grow out of the charge of discrimination." Pacheco, 448 F.3d at 789
(quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotations
omitted); Bartosh, 259 S.W.3d at 321. Thus, Manion's claims in this suit may include those stated
in her charge and factually related claims that could reasonably be expected to fall within the
agency's investigation of the claims stated in the charge. Fine v. GAF Chem. Corp., 995 F.2d 576,
578 (5th Cir. 1993) (per curiam) (not for publication); Lopez, 2012 Tex. App. LEXIS 3199, at *10;
Poindexter, 306 S.W.3d at 810; Thomas v. Clayton Williams Energy, Inc., 2 S.W.3d 734, 738 (Tex.
App.--Houston [14th Dist.] 1999, no pet.). The issue, then, is whether the factual allegations in
Manion's original charge or subsequent amendment could reasonably give rise to an investigation
of her claims of discrimination and hostile work environment based on gender. See Pacheco,
448 F.3d at 789; Lopez, 2012 Tex. App. LEXIS 3199, at *12; Poindexter, 306 S.W.3d at 810;
Clayton Williams Energy, 2 S.W.3d at 738.

 On her original charge of discrimination, Manion checked only the box next to
"Retaliation." It is clear, however, that which boxes were checked is not dispositive as to the nature
of the claim. See Sanchez, 431 F.2d at 462 (crucial element of charge is factual statement; selection
of type of discrimination is merely attachment of legal conclusion to facts alleged); Lopez,
2012 Tex. App. LEXIS 3199, at *13 (citing Sanchez). Instead, we must examine the particulars of
the charge of discrimination.

 In the section of the charge entitled "Personal Harm," Manion stated that after she
filed a formal complaint about "illegal and abusive actions" of her supervisor, she was transferred
to the night shift and that she was "subjected to retaliation by [her] employer because [she]
complained about the discriminatory treatment [she] was subjected to by [her] supervisors." In the
"Discrimination Statement" section, Manion alleged that she had been discriminated against
"because [of] retaliation." She stated that she verbally complained to Long about "hostile and
abusive treatment [she] and other employees were subject to by Ms. Girouard" and that the next day
Eacret, Girouard's supervisor, told Manion that she "was the problem" and Girouard attempted to
"intimidate" her into "withdraw[ing] the accusations." Manion asserted that she then complained
to Long of the "ongoing harassment and retaliatory accusations" and that during the subsequent
investigation, the "wrongful and hostile activity continued." Manion further stated that she filed a
written grievance and, after the investigation concluded, was informed "in loud voice and in full
public view and hearing range of other employees that [she] was being reassigned to another division
because of inmate fraternization." In the amendment to her charge, Manion stated that she was
"forced to resign because [she] could no longer tolerate the hostile work environment and retaliatory
conditions" and that she was "discriminated against because [she] complained of discriminatory and
retaliatory behavior."

 Travis County contends that Manion's charge states only a claim for retaliation and
does not contain any factual allegations of discrimination or hostile work environment based on
gender. We agree. The TCHRA allows suit against a governmental unit only when it discriminates
because of a protected status. Tex. Lab. Code Ann. § 21.051; see Cooke, 149 S.W.3d at 704 ("The
Act here allows suit against a governmental unit only when it discriminates because of race.")
(emphasis in original). Similarly, a claim of hostile work environment entails harassment based on
the plaintiff's protected status. Twigland Fashions, Ltd. v. Miller, 335 S.W.3d 206, 218 (Tex.
App.--Austin 2010, no pet.); Bartosh, 259 S.W.3d at 324 (citing Meritor Sav. Bank v. Vinson,
477 U.S. 57, 67 (1986)). Neither Manion's original charge nor the amendment contains any
reference to discriminatory treatment based on gender. She did not use the words "gender," "sex,"
"female," or any other similar word to indicate that she had been subjected to disparate treatment
based on her gender, and she did not discuss gender discrimination "in form or in substance." See
Poindexter, 306 S.W.3d at 809-10 (letters to EEOC that did not use the word "retaliation" or any
synonym, discuss retaliation, or mention events for which employer allegedly retaliated did not
allege retaliation).

 Although Manion referred once to "discriminatory treatment" and used the terms
"hostile actions," "hostile treatment," "hostile activity," and "harassment," the charge contains no
suggestion that the "discriminatory" or "hostile" treatment or "harassment" was based on gender or
any other protected class and thus contained no allegations that would serve to put the County on
notice that she intended to complain of discriminatory conduct based on sex. See Harris-Childs
v. Medco Health Solutions, Inc. of Tex. LLC, 169 F. App'x 913, 916 (5th Cir. 2006) (per curiam) (not
for publication) (complaints of "unfair treatment" and "harassment" did not put employer on notice
that complaint was based on racial or sexual discrimination); Anderson v. Limestone County,
No. 10-07-00174-CV, 2008 Tex. App. LEXIS 5041, at *34 (Tex. App.--Waco July 2, 2008, pet.
denied) (mem. op.) (vague allegation of "disparate" or "unfair" treatment did not allege gender
discrimination); cf. Santi v. University of Tex. Health Sci. Ctr. at Houston, 312 S.W.3d 800, 805-06
(Tex. App.--Houston [1st Dist.] 2009, no pet.) (assertions that plaintiff had "reported a hostile work
environment created as a result of gender-related discrimination . . . which afforded male peer faculty
members . . . advantages not allowed female . . . faculty members" and factual statements regarding
instances in which plaintiff was treated differently from male counterparts constituted allegations
of gender discrimination).

 Further, we do not believe that the factual allegations in the charge could reasonably
be expected to lead the agency to investigate discrimination based on gender. Manion's charge not
only failed to include any express references to gender discrimination or harassment, but also did not
cite any statements made to or about her or any specific actions taken regarding her employment that
might reasonably be construed as gender-based discrimination or harassment. See Fine, 995 F.2d
at 578. Nor is it likely that the circumstances surrounding the claim could reasonably spur an
investigation based on gender discrimination: Manion, a female, complained of treatment by her
female supervisor and was part of an all female staff.

 In sum, there is no mention or indication in Manion's charge that the "hostile and
abusive" actions she complained of were based on her protected status as a female, and on these facts
we cannot conclude that the allegations Manion made could reasonably lead to an agency
investigation into gender-based discrimination and harassment. See id. at 578 (allegation of gender
discrimination not included in charge was beyond scope of investigation reasonably expected
to grow out of initial charge of retaliatory discrimination); Marshall v. Federal Express Corp.,
130 F.3d 1095, 1098 (D.C. Cir. 1997) ("A vague or circumscribed . . . charge will not satisfy the
exhaustion requirement for claims it does not fairly embrace."); Thomas v. Atmos Energy Corp.,
223 F. App'x 369, 376 (5th Cir. 2007) (per curiam) (not for publication) (investigation could not
reasonably be expected to encompass employer's work assignment practices where charge listed only
sexual conduct). We therefore conclude that Manion failed to exhaust her administrative remedies
as to her claims of gender-based discrimination and hostile work environment as a matter of law, and
the trial court erred in denying the County's plea to the jurisdiction as to these claims. See City of
Waco, 259 S.W.3d at 154; Miranda, 133 S.W.3d at 226. We sustain the County's second issue.


Retaliation


 In its fifth issue, the County argues that the trial court erred in denying its plea to the
jurisdiction as to Manion's retaliation claim because Manion failed to state a prima facie case of
retaliation, thus depriving the trial court of jurisdiction. (11) "Employment-discrimination cases employ
a unique burden-shifting analysis." Cooke, 149 S.W.3d at 705. First, the plaintiff must present a
prima facie case, which entitles him to a presumption of discrimination. The burden then shifts to
the employer to articulate a legitimate, nondiscriminatory reason for its action. Once the employer
has established such a reason, the burden shifts back to the plaintiff to prove that the reason is merely
a pretext for discrimination. Id.; Deocariza v. Central Tex. College Dist., No. 03-06-00653-CV,
2008 Tex. App. LEXIS 4550, at *5-6 (Tex. App.--Austin June 19, 2008, pet. denied) (mem. op.).

 To establish a prima facie case for retaliation, a plaintiff must show that (1) she
engaged in a protected activity, (2) adverse employment action occurred, and (3) a causal link exists
between the protected activity and the adverse action. Wal-Mart Stores, Inc. v. Lane, 31 S.W.3d 282,
296 (Tex. App.--Corpus Christi 2000, pet. denied); Clayton Williams Energy, 2 S.W.3d at 739;
Mayberry v. Texas Dep't of Agric., 948 S.W.2d 312, 315 (Tex. App.--Austin 1997, writ denied).
In this case, Manion contends that both the grievance she filed with her employer and the charge she
filed with TWC were protected activities. The County contends that Manion failed to establish the
first element of a prima facie case as to her grievance and the third required element as to her charge. 
We turn first to the grievance.



 Grievance


 Section 21.055 provides that an employee engages in a protected activity when, under
the TCHRA, the employee (1) opposes a discriminatory practice, (2) makes or files a charge; (3) files
a complaint, or (4) testifies, assists, or participates in any manner in a investigation, proceeding, or
hearing. See Tex. Lab. Code Ann. § 21.055; City of Waco, 259 S.W.3d at 150. Filing a grievance
can constitute protected activity. See Lane, 31 S.W.3d at 296 (informal complaint to supervisor of
sexual harassment was protected "complaint" for purposes of section 21.055(3)); Texas Dep't of
Assistive and Rehabilitative Servs. v. Abraham, No. 03-05-00003-CV, 2006 Tex. App. LEXIS 721,
at *19 (Tex. App.--Austin Jan. 27, 2006, no pet.) (mem. op.) (same as to formal written complaint). 
However, "[e]ngaging in a protected activity requires complaining of some sort of discrimination
that is covered by the TCHRA." Spinks v. TruGreen Landcare, L.L.C., 322 F. Supp. 2d 784, 796
(S.D. Tex. 2004); Anderson, 2008 Tex. App. LEXIS 5041, at *34 (quoting Spinks); see City of Waco,
259 S.W.3d at 151 (discriminatory practices made unlawful under the TCHRA include adverse
employment decisions based on race, color, disability, religion, sex, national origin, or age). "A
vague charge of discrimination will not invoke protection under the statute." Spinks, 322 F. Supp. 
2d at 796; Anderson, 2008 Tex. App. LEXIS 5041, at *34 (quoting Spinks).

 Here, Manion's ten-page written grievance listed numerous violations of law and
office policies allegedly committed by Girouard, followed by "multiple examples" of such
violations. Included in the list was "Violation of Sheriff's Office Policy on Sexual
Harassment/Hostile work environment." In the examples that followed, however, Manion did not
allege or allude to any harassment based on sex or cite any discriminatory conduct or treatment based
on gender or any other protected class. (12) Rather, the grievance described rude and unprofessional
behavior that Girouard directed at Manion and her co-workers, including cursing, yelling, scolding
Manion and others in front of co-workers, flirting with inmates, and prying into employees' personal
lives. There were three references to a "hostile" work environment--one in connection with
Manion's opinion that other employees were keeping tabs on her, another asserting that it was
against the County's policy to allow an employee to be subjected to such an environment, and a third
alleging that no one had stopped the hostile environment Girouard created.

 We conclude that Manion's grievance did not constitute a protected activity under
section 21.005. While the grievance contains descriptions of incidents that Manion characterizes
as "harassment" and "hostile" or abusive actions, those alleged actions do not purport to be tied to
gender or any other status protected by the TCHRA. Consequently, the grievance neither raised
allegations of gender discrimination nor serves as evidence that Manion opposed a discriminatory
practice. See Harris-Childs, 169 F. App'x at 916 (complaints to employer that mentioned
"harassment" but not race or sex were not protected activity); Spinks, 322 F. Supp. 2d at 796-97
(claim of retaliation for requesting time off was "vague charge of discrimination " that did "not
invoke protection under the statute"); Ulrich v. U.S.A., Div. of Exxon Corp., 824 F. Supp. 677, 685
(S.D. Tex. 1993) (allegations of being "burned, snake bit and screwed" in ranking process without
mention of race did not raise racial discrimination or constitute protected activity); Anderson,
2008 Tex. App. LEXIS 5041, at *34 (claims of being treated as "second-class citizen," receiving
"disparate treatment," and being "singled out for unfair treatment," without reference to gender, did
not raise gender discrimination and were not protected activity). Therefore, because Manion's
grievance does not contain any allegations of violations under the TCHRA, we conclude that Manion
has not established a prima facie case that she engaged in a protected activity with regard to
her grievance.


 Charge


 The County does not challenge that in filing her charge with TWC, Manion engaged
in a protected activity. Instead, the County contends that she has failed to establish a causal link

between any protected activity and the adverse employment action. (13) A "but-for" causal nexus must
exist between the protected activity and the employer's prohibited conduct. Strong v. University
Health Care Sys., L.L.C., 482 F.3d 802, 806 (5th Cir. 2007); Gumpert v. ABF Freight Sys.,
293 S.W.3d 256, 262 (Tex. App.--Dallas 2009, pet. denied); Deocariza, 2008 Tex. App. LEXIS
4550, at *22. To establish the necessary causation, then, Manion must show that if she had not
filed her charge of discrimination with TWC, the alleged adverse employment action would not
have occurred.

 Manion has alleged two possibly adverse employment actions--her transfer to the
warrants division and her change from the A shift. (14) However, it is undisputed that both actions
occurred prior to the filing of Manion's charge. Manion was transferred to the warrants division on
December 18, 2007. She filed her charge on January 7, 2008. Manion's charge included the
following statement: "When I reported to my new post, I learned after a brief period of training
during the day shift, I would be working the midnight shift." As this statement shows, although the
parties dispute whether Manion had been assigned to the B shift or the C shift, the undisputed
evidence shows that at the time she filed her charge, both the transfer and the decision to move
Manion from the A shift had already occurred. (15) Consequently, Manion has not shown that "but-for"
the filing of her charge of discrimination, she would not have been transferred or assigned to a new
shift and has failed to establish a prima facie case for retaliation in connection with the filing of her
charge of discrimination. See Strong, 482 F.3d at 806; Gumpert, 293 S.W.3d at 262; Deocariza,
2008 Tex. App. LEXIS 4550, at *22. 

 Because Manion has not established a prima facie case as to either her grievance or
her charge, the relevant, undisputed evidence fails to raise a jurisdictional fact issue as to retaliation. 
Consequently, the trial court lacked jurisdiction as a matter of law and erred in denying the County's
plea to the jurisdiction. See Miranda, 133 S.W.3d at 227-28; Poindexter, 306 S.W.3d at 807. We
sustain the County's fifth issue.


CONCLUSION


 Because Manion failed to exhaust her administrative remedies as to her claims for
gender-based discrimination and hostile work environment and failed to establish a prima facie case
as to her claim of retaliation, the trial court lacked subject matter jurisdiction over Manion's claims. 
Therefore, we reverse the trial court's order denying the County's plea to the jurisdiction and render
judgment dismissing Manion's suit for want of jurisdiction.


 __________________________________________

 Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Reversed and Dismissed

Filed: May 17, 2012
1. Although Travis County titled its pleading Defendant's Motion to Dismiss for Lack of
Jurisdiction, the trial court referred to it as a plea to the jurisdiction, as do we.
2. The facts recited in the opinion are taken from the record on appeal, including
Manion's petition and the parties' pleadings and evidence in connection with the County's
jurisdictional challenge.
3. The parties disagree as to which shift Manion was told she would be required to work. The
County maintains that Manion was informed when she was transferred that following her training,
she would have to begin working the "C shift," from eleven p.m. to seven a.m., but it later
compromised by assigning her to the "B shift," from three p.m. to eleven p.m. The record contains
letters between the County and Manion's attorney referring to her assignment to the B shift. Manion,
however, contends that the County subsequently told her she would be required to work the C shift.
4. At the same time the County assigned Manion to the B shift, it extended Manion's one-year
probationary period as a new employee for an additional ninety days.
5. There is no evidence in the record of any investigation by the EEOC or TWC; however,
presumably Manion received a right-to-sue letter from one or both agencies.
6. Manion also asserted negligence and punitive damages claims, which she has
since abandoned.
7. When a plea to the jurisdiction challenges only the pleadings, we must determine, de novo,
if the plaintiff has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction
to hear the cause. Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). 
8. If the jurisdictional facts are disputed, the court must make the necessary findings
to resolve the issue. Miranda, 133 S.W.3d at 227-28; Good Shepherd Med. Ctr. v. State,
306 S.W.3d 825, 831-32 (Tex. App.--Austin 2010, no pet.). These findings may be challenged for
legal and factual sufficiency, and we review the trial court's jurisdictional decision based on found
facts de novo. Good Shepherd Med. Ctr., 306 S.W.3d at 832; University of Tex. v. Poindexter,
306 S.W.3d 798, 806-07 (Tex. App.--Austin 2009, no pet.).
9. In its first issue, the County argues that the trial court erred in failing to dismiss Manion's
negligence and punitive damages claims. However, because Manion has abandoned those claims
and concedes this issue on appeal, we need not reach the County's first issue. See Tex. R. App.
P. 47.1.
10. In interpreting section 21.201, we are also guided by federal law. The TCHRA was
enacted to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and
its subsequent amendments," Tex. Lab. Code Ann. § 21.001(1) (West 2006), and is "modeled after
federal civil rights law." NME Hosps., Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999). Because
one of the primary goals of the TCHRA is to coordinate state and federal employment discrimination
law, we may look to analogous federal law as authority in interpreting the TCHRA. See In re United
Servs. Auto. Ass'n, 307 S.W.3d 299, 308 (Tex. 2010); Speciality Retailers, Inc. v. DeMoranville,
933 S.W.2d 490, 492 (Tex. 1996) (per curiam); Austin State Hosp. v. Kitchen, 903 S.W.2d 83, 87-88
(Tex. App.--Austin 1995, no writ).
11. In issues three and four, the County challenges the trial court's denial of its plea to the
jurisdiction as to Manion's claims for gender-based discrimination and hostile work environment. 
Having determined that Manion failed to exhaust her administrative remedies as to these claims, we
do not reach issues three and four. See Tex. R. App. P. 47.1.
12. The only reference to the sole male employee was a statement that a particular inmate
"was expressing his worries to anyone that was near enough to hear (other inmates, myself, Willie)." 
13. Manion does not join issue on the County's argument regarding a causal link. Instead,
Manion argues that the transfer requiring a shift change was an adverse employment action. Because
the County does not challenge that required element of a prima facie case for retaliation, we assume
without deciding that the transfer and resulting shift change were adverse employment actions. 
14. In her briefing, Manion states that her "primary complaint" is not her transfer to another
department but her move to a shift she could not work because of child care issues.
15. To the extent Manion also contends the extension of her probationary period was an
adverse employment action, the evidence shows that the County notified Manion of the extension
at the same time she was notified of the shift change. Therefore the extension of probation also
occurred prior to the filing of her charge.