**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 21, 2007**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 06-30514
Summary Calendar

)))))))))))))))))))))))))))

JOSEPH JAMES THOMAS, JR.,

          Plaintiff-Appellant,

     v.

ATMOS ENERGY CORP.,

          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
No. 3:04-CV-2088

_____

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

Per Curiam:[*]

     Plaintiff-Appellant Joseph James Thomas, Jr. ("Thomas"),

brought suit against Defendant-Appellee Atmos Energy Corp.

("Atmos"), alleging that he was subjected to racial

discrimination and harassment, sexual harassment, and

retaliation, all in violation of Title VII of the Civil Rights

_____

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. (2000)("Title VII"). The district court granted summary judgment to Atmos on all claims. Thomas now appeals the district court's grant of summary judgment on his retaliation claim. Thomas also appeals the district court's decision to strike portions of affidavits he submitted as evidence. For the following reasons, we AFFIRM the decision of the district court.

## I. FACTUAL AND PROCEDURAL HISTORY

Thomas, a black male, was first hired in August 1996 to work at a Monroe, Louisiana facility owned by Louisiana Gas. The facility was subsequently bought by Citizens Communications Company ("Citizens"), formerly known as Citizens Utility Company, and then in July 2001 by Atmos. In 1999, while employed by Citizens, Thomas complained to the human resources department that his supervisor, Terry Boone ("Boone"), a white male, had called him "Mighty Joe Young . . . the big black gorilla" on more than one occasion. Citizens conducted an investigation, spoke with Thomas and Boone, and met with the construction department to review the company code of conduct, instructing the crew not to engage in harassing or intimidating conduct.

In February 2000, Thomas had an argument with his crew leader Mike Tarkington ("Tarkington") over Tarkington's request that Thomas get Tarkington's safety suit. Boone met with both men about the incident, at which time Thomas made a statement that

Boone claimed he understood as "I feel like I could blow up something." Boone reported to his operations manager that Thomas had made a threat of violence, and Thomas was fired. In November 2000, Thomas filed a complaint of race discrimination against Citizens with the Equal Employment Opportunity Commission ("EEOC"), basing his claim on the "Mighty Joe Young" comments and the Tarkington incident. Citizens conducted an investigation, and Thomas told company management that he had never threatened violence, but rather had said that he was "so upset he felt as though he could blow up or something." Concluding that a mistake might have been made about the substance of Thomas's comment, Citizens rehired Thomas, awarding him back pay for the period of his unemployment.[1]

In July 2001, Atmos purchased Citizens and became Thomas's employer. In May 2004, Thomas complained to Boone that he had been harassed by a coworker, Alvin Straughter ("Straughter"), a black male, on two occasions. On one occasion, Straughter allegedly came up behind Thomas in the break room and rubbed his genital area on Thomas's back. On the second occasion, Straughter allegedly grabbed his genital area and stated that he was going

---

[1] After investigating Thomas's complaint, the EEOC found no basis to determine that Citizens had violated the law. The EEOC issued Thomas a Notice of Right to Sue. Thomas did not file suit because, he admits, he was satisfied by his reinstatement and Citizens' handling of the matter.

to have intercourse with the folds of skin on the back of Thomas's neck. Thomas complained of Straughter's actions to Boone, who reported the complaint to higher management. Thomas and Straughter were placed on paid leave while an investigation was undertaken. Atmos's human resources manager met with Thomas and interviewed Straughter and several coworkers. Straughter denied Thomas's allegations, stating that while he had once walked behind Thomas to get to the other side of the break room table, he had not deliberately rubbed against Thomas nor spoken of intercourse. The interviewed coworkers likewise did not confirm Thomas's version of events. The coworkers did note that their group of employees often engaged in joking, teasing and name-calling, and that Thomas had initiated sexual conversations in the past.

The human resources managers decided that there was insufficient evidence that Straughter intentionally harassed Thomas. They decided to take the following steps: (1) instruct Straughter not to behave in an inappropriate manner; (2) instruct Thomas not to initiate discussions on sexual topics; (3) counsel all employees about Atmos's conduct and harassment policies; and (4) conduct training for supervisors and managers on preventing harassment. On May 25, 2004, members of Atmos's management met with Thomas and informed him of the results of their investigation and their planned course of action. Thomas became angry, declared that he was quitting his job, and did so.

4

In June 2004, Thomas filed another complaint with the EEOC, claiming racial and sexual harassment as well as retaliation for his previous EEOC complaint. On July 9, 2004, the EEOC issued to Thomas a right-to-sue letter stating that it was unable to determine that Atmos had violated the law. Thomas filed suit in federal district court on October 8, 2004, bringing claims of racial discrimination and harassment, sexual harassment, and retaliation in violation of Title VII.

On January 13, 2006, Atmos filed a motion for summary judgment on all of Thomas's claims. Thomas opposed the motion only as to his retaliation claim, and he submitted his own affidavit and that of a coworker, Will Davis ("Davis"). Atmos filed motions to strike the Thomas and Davis affidavits. On April 19, 2006, the district court issued a ruling granting in part Atmos's motions to strike and granting Atmos's motion for summary judgment on all claims. Thomas now appeals the district court's decision to strike portions of his and Davis's affidavits and the district court's grant of summary judgment to Atmos with respect to Thomas's retaliation claim.

## II. JURISDICTION

The district court's April 19, 2006 ruling was a final judgment that disposed of all of Thomas's claims. Accordingly, this court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. DISCUSSION

5

**A.   Evidentiary Issues**

### 1.   Standard of Review

We review a district court's grant of a motion to strike for abuse of discretion. <u>United States v. Pace</u>, 10 F.3d 1106, 1115 (5th Cir. 1993). We accord considerable deference to the district court's evidentiary rulings, in light of our recognition that the trial judge better understands the effect and likely probative value of proffered evidence than the appellate court. <u>Hardy v. Chemetron Corp.</u>, 870 F.2d 1007, 1009 (5th Cir. 1989). Moreover, we will reverse a judgment on the basis of an evidentiary ruling only if it affected the "substantial rights of the parties." <u>Stitt Spark Plug Co. v. Champion Spark Plug Co.</u>, 840 F.2d 1253, 1259 (5th Cir. 1988).

### 2.   Analysis

First, Thomas appeals the district court's decision to strike portions of his affidavit recounting that a former coworker, Marvin Pridgett ("Pridgett"), had told Thomas that Boone had given a negative job reference for Thomas to the City of Monroe. The district court concluded that this section of Thomas's affidavit is inadmissable hearsay and double hearsay. Thomas argues that "a nonmoving party facing a motion for summary judgment is not required to produce evidence in a form that would be admissible at trial," citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

The claim that <u>Celotex</u> warrants the admission of affidavits

6

containing hearsay misunderstands the Supreme Court's reasoning in that case. Celotex states:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . .

477 U.S. at 324. We have held that "Celotex did not alter the settled law that 'Rule 56(e) requires the adversary to set forth facts that would be admissible in evidence at trial. Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial. . . .'" Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 192 (5th Cir. 1991) (quoting Geiserman v. MacDonald, 893 F.2d 787, 793 (5th Cir. 1990)). We have explained that the above-quoted passage from Celotex permits that evidence be submitted in a form, such as an affidavit, that would ordinarily not be admitted at trial, so long as the form is one permitted by Rule 56(c). Duplantis, 948 F.2d at 192. It remains the case, however, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." FED. R. CIV. P. 56(e).

Thomas argues that Pridgett's statement that he knew that Boone had given a negative reference for Thomas to the City of Monroe is

7

not hearsay because it is an admission of a party-opponent. Thomas has not shown, however, that Pridgett was authorized to make a statement concerning the alleged negative reference, or that this subject was a matter within the scope of Pridgett's employment at Atmos. See FED. R. EVID. 801. This portion of Thomas's affidavit is therefore inadmissable hearsay, and the district court properly excluded it.

Second, Thomas appeals the exclusion of portions of his affidavit that the district court struck for being "argumentative statements, not proper fact or opinion testimony." This section of Thomas's affidavit refers repeatedly to the actions of Boone as "retaliation" and states that these actions "effected a change in the terms and conditions of affiant's employment." This section also contains the claim that "[Boone] employed the clique to do the exact same thing, resulting in retaliatory constructive discharge of affiant." Federal Rule of Evidence 701 provides that a "witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." We agree with the district court's determination that this portion of Thomas's affidavit should be excluded because it contains legal arguments and conclusions

8

inconsistent with the requirements of Rule 701. See Galindo v. Precision Am. Corp., 754 F.2d 1212, 1216 (5th Cir. 1985).

Third, Thomas appeals the district court's refusal to consider a statement in the Davis affidavit that Davis was "well aware that there were other positions open at the time of involuntary termination of [Davis's] employment with Atmos." The district court stated that it "cannot determine whether [the statement] is based on personal knowledge" and that the statement "appears irrelevant to Thomas's retaliation claim." Thomas argues that it is not necessary for an affidavit to contain an explicit statement that its averments are based on personal knowledge. While this is so, the affidavit must contain information that would allow the court to conclude that the averments are made on personal knowledge. "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." El Deeb v. Univ. of Minn., 60 F.3d 423, 428 (8th Cir. 1995). The Davis affidavit lacks such factual support for this statement. Thomas urges that Davis had been employed for sixteen years at the Monroe, Louisiana work site and was very knowledgeable about its operations. Nevertheless, there is no indication in Davis's affidavit of how he knew that there were positions open at the time of his termination. The district court did not abuse its discretion in disregarding this statement.

Fourth, Thomas appeals the district court's decision to strike

the statement in the Davis affidavit that Boone was "lazy, sorry, trifling, and good for nothing." The district court found that this testimony was "an improper opinion which is not helpful to the trier of fact." While, as Thomas contends, these characterizations may be based on Davis's personal observations of Boone, they are still unsubstantiated and conclusory. We defer to the district court's determination that this testimony would not be helpful to the trier of fact.

Fifth, Thomas appeals the district court's decision to disregard the statement in the Davis affidavit that "it was affiant's understanding that [Edmond Mathis] was placed in a co-supervisor position with [Boone], with [Boone] being demoted for his role in having [Thomas] fired." The district court concluded that this statement "does not appear to be based on personal knowledge." The Davis affidavit does not indicate how Davis might have acquired personal knowledge of the reasons for Boone's alleged demotion. While it is more probable that Davis could have discovered through personal observation that Boone and Edmond Mathis were co-supervisors, the affidavit does not indicate that he observed this. Instead, he merely states that it was his "understanding" that the two were co-supervisors. "Those facts alleged on 'understanding,' like those based on 'belief' or on 'information and belief,' are not sufficient to create a genuine issue of fact." Cermetek, Inc. v. Butler Avpak, Inc., 573 F.2d 1370, 1377 (9th Cir. 1978). The

10

district court did not abuse its discretion by excluding this statement.

Finally, Thomas appeals the district court's decision to exclude the statement in Davis's affidavit that during his employment at the Monroe facility, Davis had twice been passed over for a promotion that he deserved. The district court concluded that this statement was irrelevant to Thomas's retaliation claim, the only claim for which Thomas opposed Atmos's motion for summary judgment. While Thomas declares initially that he is appealing the district court's exclusion of this statement, he does not refer again to this statement in the body of his brief. We hold that Thomas has waived his appeal on this issue for failure to brief it adequately. See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

**B.    Summary Judgment**

<u>1.    Standard of Review</u>

We review a district court's grant of summary judgment de novo. <u>Dallas County Hosp. Dist. v. Assocs. Health & Welfare Plan</u>, 293 F.3d 282, 285 (5th Cir. 2002). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A dispute about a

11

material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding whether there is a genuine issue of material fact, this court must view all evidence in the light most favorable to the non-moving party. Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001).

2. Title VII Retaliation Framework

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). To establish a claim of retaliation under Title VII, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 414 (5th Cir. 2003). The parties agree that Thomas, by filing an EEOC complaint in 2000, had engaged in an activity protected by Title VII, thus satisfying the first element.

Thomas argues that his alleged constructive discharge

12

constitutes an adverse employment action for purposes of his

retaliation claim. A constructive discharge does qualify as an

adverse employment action. See Harvill v. Westward Communs.,

L.L.C., 433 F.3d 428, 439 (5th Cir. 2005); Landgraf v. USI Film

Prods., 968 F.2d 427, 431 (5th Cir. 1992).[2] While Thomas's

argument is convoluted, it is possible to isolate two sets of

actions as the basis for his allegation of constructive

discharge. First, Thomas claims he was ordered by Boone to

perform menial or degrading tasks such as "cleaning filthy

equipment operated by other employees," "wiping down the walls

inside the building," "us[ing] malfunctioning equipment," and

"involuntary reassignment to the galvanized pipe change out

crew," which was very physically intensive.  Second, Thomas cites

the alleged harassing conduct by Straughter and Atmos's handling

of the matter as a basis for his claim.

### 3.    Allegations Not Included in 2004 EEOC Complaint

The filing of an administrative complaint is a prerequisite

---

[2] Because Thomas specifies constructive discharge as
satisfying the adverse employment action element of his
retaliation claim, our analysis of his claim is unaffected by the
Supreme Court's recent decision in Burlington Northern & Santa Fe
Railway Co. v. White, 126 S. Ct. 2405 (2006). Constructive
discharge qualified as an adverse employment action under this
circuit's old "ultimate employment action" test, which the
Supreme Court disapproved of in Burlington Northern, and it
qualifies as such under the "material adversity" standard
established in that case. Id. at 2415. While Burlington Northern
set a lower threshold for finding an adverse employment action,
Thomas is still required to satisfy the stringent test for
constructive discharge.

to a Title VII suit. Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995). Accordingly, we may consider as the basis for Thomas's suit only the specific allegations made in his 2004 EEOC complaint, as well as "any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993). Thomas's 2004 EEOC charge listed only Straughter's "sexual [sic] explicit conduct" and Atmos's subsequent investigation as the basis for his complaint. Thomas's allegations that Boone assigned him menial and degrading tasks are not "like or related to" his accusations regarding Straughter's conduct, and an EEOC investigation into Straughter's conduct could not reasonably be expected to encompass Boone's work assignment practices. We therefore may not consider these practices as a basis for Thomas's retaliation claim.

4.   Allegations Included in 2004 EEOC Complaint

We now consider the allegations within the scope of Thomas's 2004 EEOC complaint--those concerning Straughter's 2004 conduct and the subsequent investigation by Atmos. We agree with the district court that Thomas cannot make out a prima facie case either that he suffered a constructive discharge based on the Straughter incidents and subsequent investigation or that there

14

was a causal link between these events and Thomas's 2000 EEOC complaint. For either reason, Thomas's retaliation claim must fail.

### a.    Constructive Discharge

A constructive discharge has occurred when an employee resigns after "the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir. 1994). "[T]o succeed on a constructive discharge claim, the plaintiff must show a greater degree of harassment than is required for a hostile work environment claim." Hockman v. Westward Communs., LLC, 407 F.3d 317, 332 (5th Cir. 2004).

As explained above, we are limited to considering the two instances of alleged harassment by Straughter, but this does not necessarily doom Thomas's claim. In the context of hostile work environment claims, the Supreme Court has indicated that "extremely serious" isolated incidents can "amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (citation omitted). Similarly, we have held that "isolated incidents, if egregious, can alter the terms and conditions of employment." Harvill, 433 F.3d at 435. We need not decide, however, whether Straughter's alleged harassment reached the necessary level of seriousness, because Thomas's precipitous resignation upon being informed of the results of

Atmos's investigation was not the action of a reasonable employee.

The record indicates that Atmos's response to Thomas's allegation was appropriate. Thomas and Straughter were both placed on paid leave while Atmos investigated Thomas's claims. Atmos interviewed several of Thomas's coworkers, including those that Thomas requested be interviewed. When none of these coworkers supported Thomas's accusations, Atmos still attempted to respond to Thomas's concerns. Human resources personnel pledged to counsel Straughter to refrain from inappropriate behavior and to conduct training for supervisors and managers on harassment. Thomas did not remain at Atmos to see if these efforts ended the objectionable behavior; rather, he resigned immediately. This was not the act of a reasonable employee in his position. See Thompson v. Naphcare, Inc., 117 F. App'x 317, 325 (5th Cir. 2004) (unpublished) (stating that "an employee who resigns without affording the employer a reasonable opportunity to address her concerns has not been constructively discharged"); see also Boze v. Branstetter, 912 F.2d 801, 805 (5th Cir. 1990). Even if Thomas had demonstrated that he was constructively discharged, however, he has made no prima facie case of a causal link.

### b. Causal Link

A plaintiff alleging Title VII retaliation may establish a causal link in two ways: either by presenting direct evidence of retaliatory motive or by providing circumstantial evidence that creates a rebuttable presumption of retaliatory motive. Fabela, 329

16

F.3d at 414-15. By producing direct evidence, the plaintiff avoids the McDonnell Douglas framework and shifts the burden of persuasion to the employer. Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993).

Thomas alleges that he has direct evidence of retaliatory motive. He states that in conversations with Thomas, Boone continued to bring up the Mighty Joe Young incident, complained that Thomas's EEOC complaint had brought him under tremendous pressure, and declared "if something like this ever comes up again, I will drag you through the mud." We have defined "direct evidence" as evidence which, "if believed, proves the fact without inference or presumption." Brown, 989 F.3d at 861. In a Title VII context, direct evidence includes any statement or document which shows on its face that an improper criterion was a basis for the adverse employment action. Fabela, 329 F.3d at 415. The evidence provided by Thomas does not satisfy this standard. While Boone's statements to Thomas tend to show that Boone resented Thomas for his 2000 EEOC complaint, they do not, on their face, demonstrate that Boone's subsequent actions were motivated by this resentment. Moreover, as stated below, Thomas has not shown that Boone influenced either Straughter's alleged actions or Atmos's investigation of them.

We therefore examine whether Thomas's circumstantial evidence demonstrates a retaliatory motive. Where the plaintiff provides only circumstantial evidence of causation, the McDonnell Douglas burden-shifting framework applies. Sandstad v. CB Richard Ellis, Inc., 309

17

F.3d 893, 896 (5th Cir. 2002). Thus, if the employee makes a prima facie case of retaliation, the burden of production shifts to the employer to state a legitimate, non-retaliatory reason for the employment action. Baker v. Am. Airlines, Inc., 430 F.3d 750, 754-55 (5th Cir. 2005). If the defendant meets its burden, the presumption of discrimination created by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving that the protected activity was the but-for cause of the adverse employment action. See Montemayor v. City of San Antonio, 276 F.3d 687, 692 (5th Cir. 2001).

Certainly, there can be no inference of causation from temporal proximity in this case. The incidents of alleged harassment by Straughter and Atmos's investigation occurred in the spring of 2004, a full 3.5 years after Thomas's initial EEOC complaint. We have noted that district courts in this circuit have allowed an inference of causation for summary judgment purposes where up to four months has elapsed. Evans v. Houston, 246 F.3d 344, 354 (5th Cir. 2001). The Supreme Court, however, has cited approvingly other circuit court cases that found three and four month periods too long to allow an inference of causation. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). Clearly, a lapse of 3.5 years does not permit an inference of causation.

Thomas, however, argues that a causal connection is evident because the "exact same decision-makers" were involved in the

2000 and 2004 incidents. The record indicates that Thomas was fired in 2000 after Boone reported his "blowing up" comment to Operations Manager Robert Griffin ("Griffin"), who discussed the situation with unnamed members of the human resources department. The 2004 investigation was initiated after Boone reported Thomas's new accusations to Griffin, and the investigation was carried out by Griffin, Atmos Human Resources Manager Debbie Redell ("Redell") and Vice President of Human Resources David Hebert ("Hebert"). Boone, the individual for whom there is some evidence of residual anger at Thomas, played only a minor role in the proceedings. Thomas has put forward no evidence indicating that Griffin, Redell or Hebert harbored resentment against him for his 2000 complaint, and there is substantial evidence that the 2004 investigation was carried out with fairness and diligence. Thomas has failed to present sufficient evidence to create a rebuttable presumption of retaliatory motive.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court granting summary judgment to Atmos.

AFFIRMED.

19