# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00533-CV

**County of Travis, by and through Greg Hamilton, in his Official Capacity as Sheriff of Travis County, Appellant**

**v.**

**Peggy Manion, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-GN-09-003527, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING**

## MEMORANDUM OPINION

In this interlocutory appeal, Travis County (the County) complains of the trial court's denial of its plea to the jurisdiction.[1] Peggy Manion sued the County, her former employer, alleging that she was discriminated against and subjected to a hostile work environment on the basis of gender in violation of the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Lab. Code Ann. § 21.051 (West 2006). Manion further alleged that she was retaliated against for complaining of the discriminatory treatment. *See id.* § 21.055 (West 2006). On appeal, the County contends that the trial court lacked subject matter jurisdiction and erred in denying its plea to the jurisdiction because Manion failed to exhaust her administrative remedies as to her discrimination and hostile work environment claims and failed to state a prima facie case as to any of her claims. Because we

---

[1] Although Travis County titled its pleading Defendant's Motion to Dismiss for Lack of Jurisdiction, the trial court referred to it as a plea to the jurisdiction, as do we.

conclude that the trial court lacked subject matter jurisdiction, we reverse the trial court's ruling and render judgment dismissing Manion's suit for want of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Manion was hired as an Office Specialist in the Travis County Correctional Facility Commissary on May 7, 2007.[2] She was supervised by Collette Girouard and was part of a staff that was all female with the exception of one male employee who worked with Manion under Girouard for a brief time. On October 10, 2007, Manion orally reported to Major Darren Long that she and other staff members had been subjected to abusive and hostile treatment by Girouard. She cited instances in which Girouard used profanity, yelled at Manion and her co-workers, insulted them, and humiliated them regarding disciplinary matters in the presence of others. She did not indicate that she or her co-workers were being singled out for this type of treatment based on race, gender, age or any other status. That same day, Long initiated an investigation and instructed Girouard's supervisor, Lieutenant Lloyd Eacret, to interview commissary employees. Although the employees interviewed generally referred to Girouard as direct, strict, and demanding, Eacret's interviews did not confirm Manion's allegations that Girouard created an abusive or hostile work environment.

On October 25, 2007, Girouard notified Eacret that she had held a counseling session with Manion regarding how to act around inmates. Girouard stated that she had been having some minor issues with Manion's conduct with inmates and brought in Sergeant Charles Barr, who had

---

[2] The facts recited in the opinion are taken from the record on appeal, including Manion's petition and the parties' pleadings and evidence in connection with the County's jurisdictional challenge.

2

many years of experience, to explain the best ways to supervise them. In response, Eacret directed Girouard to schedule a meeting with Manion for October 29, 2007.

At the meeting, attended by Manion, Girouard, Barr, and Long, Manion presented a written grievance reiterating and expanding on her verbal complaint to Long. Again, Manion made no allegations that she or her co-workers were being singled out on the basis of race, gender, age, or any other status. Long forwarded the grievance to the internal affairs division for investigation and directed that Girouard be temporarily reassigned, pending the investigation. Girouard was transferred from the commissary that day. The internal affairs investigation, submitted to Long on January 16, 2008, sustained Manion's allegations that Girouard used profanity, yelled at employees, and generally employed a management style that created a hostile or stressful work environment. Long recommended that Girouard receive a written reprimand, be placed on a developmental action plan, and be returned to her position as commissary manager and that her progress be monitored, especially with regard to her working relationships and demeanor with commissary staff. His recommendation was accepted and implemented and, according to subsequent interviews with commissary staff, achieved the desired results of improving the work environment and working relationships.

During the course of the investigation, on December 2, 2007, commissary staff member Betty Holter complained to Eacret that Manion was "not carrying her share of the work" and was talking to the inmates too much. She described one instance in which Manion was surrounded by inmates and expressed concern for her safety. Eacret interviewed the other commissary employees, who voiced the same observations and concerns. In light of Manion's previous

counseling regarding inmate fraternization, prior documentation of her poor work performance, her probationary status as a new employee, and the current concerns expressed by commissary staff, Eacret recommend to Long that Manion be terminated. Long, however, concluded that concerns about Manion's placing herself in dangerous situations existed because of the presence of inmates and instead transferred her to the central warrants division on December 18, 2007.

While working in the commissary and training in the warrants division, Manion worked from seven a.m. to three p.m., the "A shift." However, the County required that after she completed her training in the warrants section, Manion was to change shifts, stating that A-shift assignments in the warrants division were granted by seniority and there was no opening in the A shift for Manion.[3] Manion objected to changing from the A shift because of child care concerns and filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission Civil Right Division (TWC). In identifying the circumstance of alleged discrimination, Manion checked only the "Retaliation" box. In the discrimination statement contained in the charge, Manion stated that after she had complained of Girouard's hostile and abusive activity, she was transferred and subsequently informed that she would have to work "the midnight shift."

---

[3] The parties disagree as to which shift Manion was told she would be required to work. The County maintains that Manion was informed when she was transferred that following her training, she would have to begin working the "C shift," from eleven p.m. to seven a.m., but it later compromised by assigning her to the "B shift," from three p.m. to eleven p.m. The record contains letters between the County and Manion's attorney referring to her assignment to the B shift. Manion, however, contends that the County subsequently told her she would be required to work the C shift.

4

The parties continued to discuss the shift change and mediated the charge on April 23, 2008. During the discussions, the County offered to transfer Manion's husband, who also worked for the County, to the A shift, so that he would be available to address their child care concerns, but Manion declined to involve her husband and his work schedule. The County also offered Manion her previous position in the commissary under the supervision of Girouard, which Manion also declined. The parties were unable to resolve the dispute through discussion and mediation, and on May 2, 2008, the County assigned Manion to the B shift.[4] On May 7, 2008, Manion resigned, claiming constructive discharge based on the forced shift change. On June 24, 2008, Manion filed an amendment to her charge, adding claims that she was forced to resign because of a hostile work environment and retaliatory conditions and that she was discriminated against because she complained of discriminatory and retaliatory behavior.

In October 2009, Manion filed this suit[5] alleging that she was discriminated against and subjected to a hostile work environment on the basis of gender, *see* Tex. Lab. Code Ann. § 21.051, and retaliated against for complaining of the discriminatory treatment, *see id.* § 21.055.[6] The County answered and filed a plea to the jurisdiction contending that the trial court lacked subject matter jurisdiction over Manion's claims because she had failed to perfect her claims of

---

[4] At the same time the County assigned Manion to the B shift, it extended Manion's one-year probationary period as a new employee for an additional ninety days.

[5] There is no evidence in the record of any investigation by the EEOC or TWC; however, presumably Manion received a right-to-sue letter from one or both agencies.

[6] Manion also asserted negligence and punitive damages claims, which she has since abandoned.

discrimination and hostile work environment and failed to establish the prima facie elements of any of her claims. The trial court denied the plea to the jurisdiction. This appeal followed.

## DISCUSSION

**Standard of Review**

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Because subject matter jurisdiction presents a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). Where, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we may consider relevant evidence submitted by the parties and must do so when necessary to resolve the jurisdictional issue. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 223, 227 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex. 2000); *Lopez v. Texas State Univ.*, ___S.W.3d ___, No. 03-10-00867-CV, 2012 Tex. App. LEXIS 3199, at *7 (Tex. App.—Austin Apr. 20, 2012, no pet. h.); *Good Shepherd Med. Ctr. v. State*, 306 S.W.3d 825, 831 (Tex. App.—Austin 2010, no pet.).[7]

When the challenge to jurisdictional facts does not implicate the merits of the case, and the facts are undisputed, the trial court rules on the plea to the jurisdiction as a matter of law, and the appellate court reviews the ruling de novo. *Miranda*, 133 S.W.3d at 226–27; *Lopez*, 2012 Tex. App. LEXIS 3199, at *8; *University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex. App.—Austin

---

[7] When a plea to the jurisdiction challenges only the pleadings, we must determine, de novo, if the plaintiff has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

2009, no pet.).[8] When the plea to the jurisdictional facts implicates the merits of the plaintiff's cause of action, the party has a burden similar to that in a traditional summary judgment. *Miranda*, 133 S.W.3d at 227–28; *Good Shepherd Med. Ctr.*, 306 S.W.3d at 831. If the evidence creates a fact issue as to jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the fact finder at trial. *Miranda*, 133 S.W.3d at 227–28; *Poindexter*, 306 S.W.3d at 807. On the other hand, if the evidence is undisputed or fails to raise a fact issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228; *Poindexter*, 306 S.W.3d at 807.

**Governmental Immunity under the TCHRA**

Governmental immunity deprives a trial court of subject matter jurisdiction in suits against political subdivision of the state, including counties, unless the political subdivision consents to suit and is therefore properly asserted in a plea to the jurisdiction. *Rolling Plains Groundwater Conservation Dist. v. City of Aspermont*, 353 S.W.3d 756, 759 n.4 (Tex. 2011) (per curiam) (distinguishing between sovereign immunity, which protects the State and its divisions from suit and liability, and governmental immunity, which affords like protection to political subdivisions, including counties, cities, and school districts); *Miranda*, 133 S.W.3d at 224, 225–26. The TCHRA provides a limited waiver of governmental immunity when a governmental unit has committed

---

[8] If the jurisdictional facts are disputed, the court must make the necessary findings to resolve the issue. *Miranda*, 133 S.W.3d at 227–28; *Good Shepherd Med. Ctr. v. State*, 306 S.W.3d 825, 831–32 (Tex. App.—Austin 2010, no pet.). These findings may be challenged for legal and factual sufficiency, and we review the trial court's jurisdictional decision based on found facts de novo. *Good Shepherd Med. Ctr.*, 306 S.W.3d at 832; *University of Tex. v. Poindexter*, 306 S.W.3d 798, 806–07 (Tex. App.—Austin 2009, no pet.).

employment discrimination on the basis of race, color, disability, religion, sex, national origin, or age, *see* Tex. Lab. Code Ann. §§ 21.002 (West Supp. 2011) (defining "employer" to include a county, municipality, state agency, or state instrumentality), .051 (outlining circumstances under which employer commits discrimination), or has retaliated or discriminated against a person who, under the TCHRA, opposes a discriminatory practice, makes or files a charge, files a complaint, or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing, *see id.* § 21.055 (outlining circumstances under which employer commits retaliation). "For a suit to proceed against a governmental unit under a statute [that waives immunity], the court must first look to the terms of the Act to determine the scope of its waiver and then 'consider the particular facts of the case . . . to determine whether it comes within that scope.'" *Texas Dep't of Criminal Justice v. Cooke*, 149 S.W.3d 700,704 (Tex. App.—Austin 2004, no pet.) (quoting *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) (ellipsis in original)).

**Scope of Charge**

In its second issue, the County argues that the trial court erred in failing to dismiss Manion's gender discrimination and hostile work environment claims because she did not timely assert them at the administrative level.[9] The County contends that Manion's original charge of discrimination asserted only a retaliation claim and that to the extent Manion alleged claims for discrimination and hostile environment in the amendment to her charge, those claims were not made

---

[9] In its first issue, the County argues that the trial court erred in failing to dismiss Manion's negligence and punitive damages claims. However, because Manion has abandoned those claims and concedes this issue on appeal, we need not reach the County's first issue. *See* Tex. R. App. P. 47.1.

within 180 days of the alleged discriminatory activity as required by section 21.002 and were thus time-barred. *See* Tex. Lab. Code Ann. § 21.202 (West 2006). Therefore, the County asserts, the trial court lacked jurisdiction over Manion's discrimination and hostile environment claims. Because this issue challenges jurisdictional facts that do not implicate the merits of the case, and the facts are undisputed, we review the trial court's ruling de novo. *Miranda*, 133 S.W.3d at 226–27; *Poindexter*, 306 S.W.3d at 806.

It is well settled that an action under the TCHRA requires an exhaustion of administrative remedies, *see Hoffmann-La Roche, Inc., v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004) (exhaustion of remedies mandatory prerequisite to filing civil action under the TCHRA), and that the failure to exhaust the TCHRA's administrative remedies is a jurisdictional defect, *see City of Waco v. Lopez*, 259 S.W.3d 147, 149, 154 (Tex. 2008) (noncompliance with TWC procedures deprives courts of subject matter jurisdiction). Under the TCHRA, the exhaustion of administrative remedies begins when a party files a charge of discrimination with the TWC. *See* Tex. Lab. Code Ann. § 21.201 (West 2006); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010). A primary purpose of the charge is to trigger an agency investigation so that voluntary compliance is achieved through a conciliatory process. *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006).[10]

---

[10] In interpreting section 21.201, we are also guided by federal law. The TCHRA was enacted to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," Tex. Lab. Code Ann. § 21.001(1) (West 2006), and is "modeled after federal civil rights law." *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). Because one of the primary goals of the TCHRA is to coordinate state and federal employment discrimination law, we may look to analogous federal law as authority in interpreting the TCHRA. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308 (Tex. 2010); *Speciality Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam); *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 87–88 (Tex. App.—Austin 1995, no writ).

"'The crucial element of a charge of discrimination is the factual statement contained' in the administrative complaint." *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied) (quoting *Preston v. Texas Dep't of Family & Protective Servs.*, 222 Fed. Appx. 353, 356 (5th Cir. 2007) (per curiam)). Because most complaints are made by persons unfamiliar with the technicalities of formal pleadings, courts construe the complaint liberally and "look slightly beyond its four corners, to its substance rather than its label." *Pacheco*, 448 F.3d at 788–89. Nonetheless, the charge must "contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges." *Bartosh*, 259 S.W.3d at 321 (citing *Preston*, 222 F. App'x at 356). "[W]e will not construe the charge to include facts that were initially omitted." *Harris v. David McDavid Honda*, 213 F. App'x 258, 261 (5th Cir. 2006) (per curiam) (not for publication) (citing *Price v. Southwestern Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)).

The scope of a suit under the TCHRA is limited to the scope of the investigation that "can reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970)) (internal quotations omitted); *Bartosh*, 259 S.W.3d at 321. Thus, Manion's claims in this suit may include those stated in her charge and factually related claims that could reasonably be expected to fall within the agency's investigation of the claims stated in the charge. *Fine v. GAF Chem. Corp*., 995 F.2d 576, 578 (5th Cir. 1993) (per curiam) (not for publication); *Lopez*, 2012 Tex. App. LEXIS 3199, at *10; *Poindexter*, 306 S.W.3d at 810; *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The issue, then, is whether the factual allegations in Manion's original charge or subsequent amendment could reasonably give rise to an investigation

10

of her claims of discrimination and hostile work environment based on gender. *See Pacheco*, 448 F.3d at 789; *Lopez*, 2012 Tex. App. LEXIS 3199, at \*12; *Poindexter*, 306 S.W.3d at 810; *Clayton Williams Energy*, 2 S.W.3d at 738.

On her original charge of discrimination, Manion checked only the box next to "Retaliation." It is clear, however, that which boxes were checked is not dispositive as to the nature of the claim. *See Sanchez*, 431 F.2d at 462 (crucial element of charge is factual statement; selection of type of discrimination is merely attachment of legal conclusion to facts alleged); *Lopez*, 2012 Tex. App. LEXIS 3199, at \*13 (citing *Sanchez*). Instead, we must examine the particulars of the charge of discrimination.

In the section of the charge entitled "Personal Harm," Manion stated that after she filed a formal complaint about "illegal and abusive actions" of her supervisor, she was transferred to the night shift and that she was "subjected to retaliation by [her] employer because [she] complained about the discriminatory treatment [she] was subjected to by [her] supervisors." In the "Discrimination Statement" section, Manion alleged that she had been discriminated against "because [of] retaliation." She stated that she verbally complained to Long about "hostile and abusive treatment [she] and other employees were subject to by Ms. Girouard" and that the next day Eacret, Girouard's supervisor, told Manion that she "was the problem" and Girouard attempted to "intimidate" her into "withdraw[ing] the accusations." Manion asserted that she then complained to Long of the "ongoing harassment and retaliatory accusations" and that during the subsequent investigation, the "wrongful and hostile activity continued." Manion further stated that she filed a written grievance and, after the investigation concluded, was informed "in loud voice and in full

11

public view and hearing range of other employees that [she] was being reassigned to another division because of inmate fraternization." In the amendment to her charge, Manion stated that she was "forced to resign because [she] could no longer tolerate the hostile work environment and retaliatory conditions" and that she was "discriminated against because [she] complained of discriminatory and retaliatory behavior."

Travis County contends that Manion's charge states only a claim for retaliation and does not contain any factual allegations of discrimination or hostile work environment based on gender. We agree. The TCHRA allows suit against a governmental unit only when it discriminates *because of* a protected status. Tex. Lab. Code Ann. § 21.051; *see Cooke*, 149 S.W.3d at 704 ("The Act here allows suit against a governmental unit only when it discriminates *because of* race.") (emphasis in original). Similarly, a claim of hostile work environment entails harassment *based on* the plaintiff's protected status. *Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 218 (Tex. App.—Austin 2010, no pet.); *Bartosh*, 259 S.W.3d at 324 (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). Neither Manion's original charge nor the amendment contains any reference to discriminatory treatment based on gender. She did not use the words "gender," "sex," "female," or any other similar word to indicate that she had been subjected to disparate treatment based on her gender, and she did not discuss gender discrimination "in form or in substance." *See Poindexter*, 306 S.W.3d at 809–10 (letters to EEOC that did not use the word "retaliation" or any synonym, discuss retaliation, or mention events for which employer allegedly retaliated did not allege retaliation).

Although Manion referred once to "discriminatory treatment" and used the terms "hostile actions," "hostile treatment," "hostile activity," and "harassment," the charge contains no suggestion that the "discriminatory" or "hostile" treatment or "harassment" was based on gender or any other protected class and thus contained no allegations that would serve to put the County on notice that she intended to complain of discriminatory conduct based on sex. *See Harris-Childs v. Medco Health Solutions, Inc. of Tex. LLC*, 169 F. App'x 913, 916 (5th Cir. 2006) (per curiam) (not for publication) (complaints of "unfair treatment" and "harassment" did not put employer on notice that complaint was based on racial or sexual discrimination); *Anderson v. Limestone County*, No. 10-07-00174-CV, 2008 Tex. App. LEXIS 5041, at *34 (Tex. App.—Waco July 2, 2008, pet. denied) (mem. op.) (vague allegation of "disparate" or "unfair" treatment did not allege gender discrimination); *cf. Santi v. University of Tex. Health Sci. Ctr. at Houston*, 312 S.W.3d 800, 805–06 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (assertions that plaintiff had "reported a hostile work environment created as a result of gender-related discrimination . . . which afforded male peer faculty members . . . advantages not allowed female . . . faculty members" and factual statements regarding instances in which plaintiff was treated differently from male counterparts constituted allegations of gender discrimination).

Further, we do not believe that the factual allegations in the charge could reasonably be expected to lead the agency to investigate discrimination based on gender. Manion's charge not only failed to include any express references to gender discrimination or harassment, but also did not cite any statements made to or about her or any specific actions taken regarding her employment that might reasonably be construed as gender-based discrimination or harassment. *See Fine*, 995 F.2d

13

at 578. Nor is it likely that the circumstances surrounding the claim could reasonably spur an investigation based on gender discrimination: Manion, a female, complained of treatment by her female supervisor and was part of an all female staff.

In sum, there is no mention or indication in Manion's charge that the "hostile and abusive" actions she complained of were based on her protected status as a female, and on these facts we cannot conclude that the allegations Manion made could reasonably lead to an agency investigation into gender-based discrimination and harassment. *See id.* at 578 (allegation of gender discrimination not included in charge was beyond scope of investigation reasonably expected to grow out of initial charge of retaliatory discrimination); *Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) ("A vague or circumscribed . . . charge will not satisfy the exhaustion requirement for claims it does not fairly embrace."); *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 376 (5th Cir. 2007) (per curiam) (not for publication) (investigation could not reasonably be expected to encompass employer's work assignment practices where charge listed only sexual conduct). We therefore conclude that Manion failed to exhaust her administrative remedies as to her claims of gender-based discrimination and hostile work environment as a matter of law, and the trial court erred in denying the County's plea to the jurisdiction as to these claims. *See City of Waco*, 259 S.W.3d at 154; *Miranda*, 133 S.W.3d at 226. We sustain the County's second issue.

**Retaliation**

In its fifth issue, the County argues that the trial court erred in denying its plea to the jurisdiction as to Manion's retaliation claim because Manion failed to state a prima facie case of

retaliation, thus depriving the trial court of jurisdiction.[11] "Employment-discrimination cases employ a unique burden-shifting analysis." *Cooke*, 149 S.W.3d at 705. First, the plaintiff must present a prima facie case, which entitles him to a presumption of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Once the employer has established such a reason, the burden shifts back to the plaintiff to prove that the reason is merely a pretext for discrimination. *Id.*; *Deocariza v. Central Tex. College Dist.*, No. 03-06-00653-CV, 2008 Tex. App. LEXIS 4550, at *5–6 (Tex. App.—Austin June 19, 2008, pet. denied) (mem. op.).

To establish a prima facie case for retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse action. *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 296 (Tex. App.—Corpus Christi 2000, pet. denied); *Clayton Williams Energy*, 2 S.W.3d at 739; *Mayberry v. Texas Dep't of Agric.*, 948 S.W.2d 312, 315 (Tex. App.—Austin 1997, writ denied). In this case, Manion contends that both the grievance she filed with her employer and the charge she filed with TWC were protected activities. The County contends that Manion failed to establish the first element of a prima facie case as to her grievance and the third required element as to her charge. We turn first to the grievance.

---

[11] In issues three and four, the County challenges the trial court's denial of its plea to the jurisdiction as to Manion's claims for gender-based discrimination and hostile work environment. Having determined that Manion failed to exhaust her administrative remedies as to these claims, we do not reach issues three and four. *See* Tex. R. App. P. 47.1.

*Grievance*

Section 21.055 provides that an employee engages in a protected activity when, under the TCHRA, the employee (1) opposes a discriminatory practice, (2) makes or files a charge; (3) files a complaint, or (4) testifies, assists, or participates in any manner in a investigation, proceeding, or hearing. *See* Tex. Lab. Code Ann. § 21.055; *City of Waco*, 259 S.W.3d at 150. Filing a grievance can constitute protected activity. *See Lane*, 31 S.W.3d at 296 (informal complaint to supervisor of sexual harassment was protected "complaint" for purposes of section 21.055(3)); *Texas Dep't of Assistive and Rehabilitative Servs. v. Abraham*, No. 03-05-00003-CV, 2006 Tex. App. LEXIS 721, at *19 (Tex. App.—Austin Jan. 27, 2006, no pet.) (mem. op.) (same as to formal written complaint). However, "[e]ngaging in a protected activity requires complaining of some sort of discrimination that is covered by the TCHRA." *Spinks v. TruGreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 796 (S.D. Tex. 2004); *Anderson*, 2008 Tex. App. LEXIS 5041, at *34 (quoting *Spinks*); *see City of Waco*, 259 S.W.3d at 151 (discriminatory practices made unlawful under the TCHRA include adverse employment decisions based on race, color, disability, religion, sex, national origin, or age). "A vague charge of discrimination will not invoke protection under the statute." *Spinks*, 322 F. Supp. 2d at 796; *Anderson*, 2008 Tex. App. LEXIS 5041, at *34 (quoting *Spinks*).

Here, Manion's ten-page written grievance listed numerous violations of law and office policies allegedly committed by Girouard, followed by "multiple examples" of such violations. Included in the list was "Violation of Sheriff's Office Policy on Sexual Harassment/Hostile work environment." In the examples that followed, however, Manion did not allege or allude to any harassment based on sex or cite any discriminatory conduct or treatment based

16

on gender or any other protected class.[12]  Rather, the grievance described rude and unprofessional behavior that Girouard directed at Manion and her co-workers, including cursing, yelling, scolding Manion and others in front of co-workers, flirting with inmates, and prying into employees' personal lives.  There were three references to a "hostile" work environment—one in connection with Manion's opinion that other employees were keeping tabs on her, another asserting that it was against the County's policy to allow an employee to be subjected to such an environment, and a third alleging that no one had stopped the hostile environment Girouard created.

We conclude that Manion's grievance did not constitute a protected activity under section 21.005.  While the grievance contains descriptions of incidents that Manion characterizes as "harassment" and "hostile" or abusive actions, those alleged actions do not purport to be tied to gender or any other status protected by the TCHRA.  Consequently, the grievance neither raised allegations of gender discrimination nor serves as evidence that Manion opposed a discriminatory practice.  *See Harris-Childs*, 169 F. App'x at 916 (complaints to employer that mentioned "harassment" but not race or sex were not protected activity); *Spinks*, 322 F. Supp. 2d at 796–97 (claim of retaliation for requesting time off was "vague charge of discrimination " that did "not invoke protection under the statute"); *Ulrich v. U.S.A., Div. of Exxon Corp.*, 824 F. Supp. 677, 685 (S.D. Tex. 1993) (allegations of being "burned, snake bit and screwed" in ranking process without mention of race did not raise racial discrimination or constitute protected activity); *Anderson*, 2008 Tex. App. LEXIS 5041, at *34 (claims of being treated as "second-class citizen," receiving

---

[12] The only reference to the sole male employee was a statement that a particular inmate "was expressing his worries to anyone that was near enough to hear (other inmates, myself, Willie)."

"disparate treatment," and being "singled out for unfair treatment," without reference to gender, did not raise gender discrimination and were not protected activity). Therefore, because Manion's grievance does not contain any allegations of violations under the TCHRA, we conclude that Manion has not established a prima facie case that she engaged in a protected activity with regard to her grievance.

*Charge*

The County does not challenge that in filing her charge with TWC, Manion engaged in a protected activity. Instead, the County contends that she has failed to establish a causal link between any protected activity and the adverse employment action.[13] A "but-for" causal nexus must exist between the protected activity and the employer's prohibited conduct. *Strong v. University Health Care Sys., L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007); *Gumpert v. ABF Freight Sys.*, 293 S.W.3d 256, 262 (Tex. App.—Dallas 2009, pet. denied); *Deocariza*, 2008 Tex. App. LEXIS 4550, at *22. To establish the necessary causation, then, Manion must show that if she had not filed her charge of discrimination with TWC, the alleged adverse employment action would not have occurred.

Manion has alleged two possibly adverse employment actions—her transfer to the warrants division and her change from the A shift.[14] However, it is undisputed that both actions

---

[13] Manion does not join issue on the County's argument regarding a causal link. Instead, Manion argues that the transfer requiring a shift change was an adverse employment action. Because the County does not challenge that required element of a prima facie case for retaliation, we assume without deciding that the transfer and resulting shift change were adverse employment actions.

[14] In her briefing, Manion states that her "primary complaint" is not her transfer to another department but her move to a shift she could not work because of child care issues.

occurred *prior to* the filing of Manion's charge. Manion was transferred to the warrants division on December 18, 2007. She filed her charge on January 7, 2008. Manion's charge included the following statement: "When I reported to my new post, I learned after a brief period of training during the day shift, I would be working the midnight shift." As this statement shows, although the parties dispute whether Manion had been assigned to the B shift or the C shift, the undisputed evidence shows that at the time she filed her charge, both the transfer and the decision to move Manion from the A shift had already occurred.[15] Consequently, Manion has not shown that "but-for" the filing of her charge of discrimination, she would not have been transferred or assigned to a new shift and has failed to establish a prima facie case for retaliation in connection with the filing of her charge of discrimination. *See Strong*, 482 F.3d at 806; *Gumpert*, 293 S.W.3d at 262; *Deocariza*, 2008 Tex. App. LEXIS 4550, at *22.

Because Manion has not established a prima facie case as to either her grievance or her charge, the relevant, undisputed evidence fails to raise a jurisdictional fact issue as to retaliation. Consequently, the trial court lacked jurisdiction as a matter of law and erred in denying the County's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28; *Poindexter*, 306 S.W.3d at 807. We sustain the County's fifth issue.

---

[15] To the extent Manion also contends the extension of her probationary period was an adverse employment action, the evidence shows that the County notified Manion of the extension at the same time she was notified of the shift change. Therefore the extension of probation also occurred prior to the filing of her charge.

19

## CONCLUSION

Because Manion failed to exhaust her administrative remedies as to her claims for gender-based discrimination and hostile work environment and failed to establish a prima facie case as to her claim of retaliation, the trial court lacked subject matter jurisdiction over Manion's claims. Therefore, we reverse the trial court's order denying the County's plea to the jurisdiction and render judgment dismissing Manion's suit for want of jurisdiction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Reversed and Dismissed

Filed:   May 17, 2012

20